BURNS *v.* STATE.

Opinion delivered June 12, 1922.

INTOXICATING LIQUORS—MAKING MASH FOR DISTILLATION—EVIDENCE.— In a prosecution for making mash, wort or wash fit for distillation of intoxicating liquors, where defendant testified that he made mash to feed hogs, proof by the officers searching the premises that his wife emptied vessels through the kitchen floor into

a garbage can and that they found several bottles and a jug smelling of whiskey, four barrels of mash in a state of fermentation, a trough with worm and pipe, under which there had been a fire, a still, etc., was competent and sufficient to support a finding of guilt.

Appeal from Lafayette Circuit Court; *George R. Haynie,* Judge; affirmed.

No brief for appellant.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *Wm. T. Hammock,* Assistants, for appellee.

SMITH, J. Appellant was indicted and convicted for having made a "mash, wort, or wash fit for and to be used in the distillation of alcoholic, vinous, malt, spirituous, and fermented liquors," and has appealed. No brief was filed on behalf of appellant; but the Attorney General has set out and discussed all the assignments of error contained in the motion for a new trial. These are, chiefly, that the evidence is not sufficient to sustain a conviction; and that error was committed in admitting testimony. These assignments of error will be discussed together.

The sheriff, accompanied by three deputies, went to appellant's home to serve a search warrant. They arrived after dark, and were told by appellant that his wife had retired for the night, and the officers consented to delay the search until appellant's wife had dressed. After waiting some time the officers discovered that appellant's wife was busily engaged in emptying some vessels through a hole in the kitchen floor; so they shoved the door of the kitchen open and found appellant's wife in the act of pouring a mash into a garbage can on the outside. Some of the mash had also been poured through a hole in the kitchen floor. Several bottles and a jug were found, all smelling of whiskey. Three barrels of mash were found, which had been made of chops and water and sweetened with molasses. One barrel of the mash was sweetened with sugar. The mash was in a state of fermentation, and was just such mash as wit-

nesses had seen used in making whiskey. Pieces of Irish potatoes were found in some of the mash, and one of the officers, who testified that he was familiar with the process of making whiskey, stated that the potatoes were used to hasten fermentation.

The sheriff and the other officers found a gallon of white whiskey and several empty vessels which had contained whiskey. They searched the premises, and on a little branch, about a hundred yards from the house, down a pathway leading from appellant's house, they found a trough upon a rack, and the trough had a pipe through it, and there had been a fire under the trough. The next morning the officers found a little mound in a cornfield, into which they dug and found a still. The officers had seen similar stills used in making whiskey, and the still which they found showed that it had had a fire under it and smelled of the mash which had been boiled in it. Tracks were found leading from appellant's house to the trough and to the mound in the field. A worm was found in the trough in the branch. The officers testified that they tasted the mash and that it was in a state of fermentation, and that it tasted and smelled like whiskey. One of the officers saw appellant's wife pouring whiskey out of a fruit jar at a window. The officer, who was familiar with the process of manufacturing whiskey, testified that the different barrels of mash would not all make the same kind of liquor; that some would make whiskey; and other barrels would make rum; while the barrel which contained the chops, sugar and potatoes would make what the witness called a "Duke's mixture," but he testified that it would all be alcoholic and intoxicating.

Appellant admitted that he made the mash, but testified that he made it for, and fed it to, his hogs, and that he had made no whiskey. Appellant owned a sow and seven small pigs, and he testified that he fed them sour mash, and that the mash on hand had been prepared for that purpose.

An exception was saved to the action of the court in permitting a witness named Burns to testify that on another occasion he had found a slop which resembled the mash in question at appellant's house.

On his cross-examination appellant was asked, over his objections and exceptions, about the whiskey in his house at the time it was raided. He did not deny having whiskey in his possession, but he did deny having made it or having made a mash to be used for that purpose. Some of the barrels of mash found in his house were covered with cloths. He explained that this had been done to keep the dust out of it.

We think the testimony set out was competent; and that it is sufficient to sustain the conviction. Appellant was accused of having made a mash, wort or wash fit for distillation; and the testimony objected to tended to show that he had committed that crime. In the case of *Logan* v. *State,* 150 Ark. 486, we defined the phrase, "fit for distillation," contained in the statute under which appellant was convicted, as meaning that the mash was intended for use in making alcoholic liquors, and not as meaning merely that it was adapted to or capable of being used for such purposes. Appellant testified that he had made the mash for a lawful purpose, to-wit: as feed for his hogs. The testimony objected to tended to show that the mash had been made for use in making whiskey, and it was therefore competent, and, as we have said, is sufficient to support the judgment, which must therefore be affirmed. It is so ordered.