DICKERSON v. STATE.

Opinion delivered November 12, 1923.

1. INTOXICATING LIQUORS—ALLEGATION OF INTENT.—An indictment charging that defendant "unlawfully, maliciously and feloniously did make mash, wort and wash fit for distillation and manufacture of alcoholic liquor," sufficiently alleges the intent with which the mash, wort or wash was made, under General Acts 1921, p. 372, § 1; "fit for" meaning intended for.

2. INDICTMENT AND INFORMATION—MEANING OF STATUTORY LANGUAGE. —Language of an indictment for a statutory offense will be construed as having been used in the sense in which the statute has been defined by the Supreme Court.

3. GRAND JURY—QUALIFICATIONS OF JURORS.—Under Crawford & Moses' Digest, § 3030, providing that "no indictment shall be void or voidable because any of the grand jury failed to possess any of the qualifications required by law," held that an indictment will not be quashed because two women were members of the grand jury, even if there was any doubt as to the eligibility of women to serve on juries.

4. JURY—RIGHT TO FULL PANEL.—Accused's right to a full panel of 24 jurors to select from is waived where he did not request a drawn jury.

5. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT.— In determining the sufficiency of evidence to support a verdict, that tending to support it must be given its highest probative value.

6. INTOXICATING LIQUORS—MAKING MASH—EVIDENCE.—Evidence *held* to sustain conviction for making mash fit for distillation.

7. CRIMINAL LAW—INSTRUCTION ON CIRCUMSTANTIAL EVIDENCE.—In a prosecution for making mash, an instruction given by the court which stated that such evidence, when sufficient to "satisfy the mind of the jury, beyond a reasonable doubt, is legal and competent evidence on which to base a conviction, regardless of the nature of the crime or the extent of the punishment," but that, to justify conviction on circumstantial evidence above, "the circumstances must be consistent with each other and inconsistent with any other reasonable hypothesis, except that the defendant is guilty," *held* not argumentative or a charge on the facts.

8. CRIMINAL LAW—ABSTRACT INSTRUCTION—HARMLESS ERROR.—In a prosecution for making mash fit for distillation, an instruction that "if some one else made the mash alleged in the indictment for" defendant "by his direction or consent," then defendant would· be held to have made it, though erroneous as being abstract, *held* not prejudicial where defendant was not charged as an accessory, and where it was undisputed that no one else had anything to do with making the mash.

9. INTOXICATING LIQUORS—REFUSAL OF INSTRUCTION DEFINING "MASH, WASH OR WORT."—In a prosecution for manufacturing "mash, wash or wort fit for distillation," where all the witnesses referred to the concoction as "mash," and no testimony related to "wash" or "wort," it was not error to refuse to instruct the jury as to the meaning of the three words, "mash, wash or wort."

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; affirmed.

*P. H. Dickerson,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter, Wm. T. Hammock* and *Darden Moose,* Assistants, for appellee.

SMITH, J. Appellant was tried and convicted under an indictment which charged that he "unlawfully, wilfully and feloniously did make mash, wort and wash fit for the distillation and manufacture of alcoholic liquor, the said P. H. Dickerson not being a person authorized

under the laws of the United States to manufacture sweet cider, vinegar, non-alcoholic or spirits for other than beverage purposes."

It is first insisted that the demurrer to the indictment should have been sustained because the indictment does not allege the intent with which the mash, wort or wash was made. It will be observed that the indictment substantially follows the language of the statute, and it sufficiently apprised the accused of the offense with which he was charged. The indictment charges that the mash, wort or wash was fit for the distillation and the manufacture of alcoholic liquor, and this is made a crime by § 1 of act 324 of the Acts of 1921 (General Acts 1921, p. 372).

The phrase, "fit for," which is copied in the indictment from the statute, has been defined as meaning "intended for," in the cases of *Logan* v. *State,* 150 Ark. 486, and *Milliner* v. *State,* 154 Ark. 608, and the indictment will, of course, be construed as using the phrase as we have defined it.

A motion to quash the indictment was filed upon the ground that it was returned by an illegally constituted grand jury, in that two women were members thereof. It is by statute expressly provided that "no indictment shall be void or voidable because any of the grand jury fail to possess any of the qualifications required by law." Section 3030, C. & M. Digest.

In the very recent case of *St. Clair* v. *State,* 160 Ark. 170, we said: "There was a motion in each case to quash the indictment on the ground that one of the grand jurors failed to possess the necessary qualifications in that he was not a citizen and elector of the State. The statute precludes an inquiry into that question for the purpose of quashing an indictment. Crawford & Moses' Digest, § 3030; *Calloway* v. *State,* 120 Ark. 204; *Borland* v. *State,* 158 Ark. 37."

The statute precludes any consideration of the question of the competency of the grand jurors, if there was

in fact any doubt about the eligibility of women to serve on juries.

It is assigned as error that appellant was denied a full panel of jurors from which to select the jury. As a matter of fact, as is reflected by the record, there were twenty-four jurors in the box when the trial began, but, before the examination of the jurors on their *voir dire* began, the court excused one of them on the ground that he had been a member of the grand jury which returned the indictment. However, a drawn jury was not requested, and the right thereto must therefore be held to have been waived, and, in the very recent case of *Bohannon* v. *State,* 160 Ark. 431, we held that the accused's right to be confronted with a full panel of twenty-four jurors is only accorded when a drawn jury is not waived.

It is earnestly insisted that the testimony is insufficient to support the verdict, and that such circumstances as tended to incriminate the accused were so fully explained that it was arbitrary for the jury to disregard the explanation.

It may be said that the defendant offered explanations of the State's testimony, which, if accepted as true, did show that he was not guilty of the crime charged; but it was the province of the jury to pass upon this testimony and to discard such portions of it as were not credited. In passing upon the question of the legal sufficiency of the testimony to support the jury's verdict we must, of course, give to the evidence which tends to support the verdict its highest probative value.

The testimony offered by the State was to the effect that, when the appellant was arrested, he had three pint bottles of whiskey on his person. That a search of his house was made, and a ten or fifteen-gallon keg was found, about two-thirds full of fermented mash, which, upon being analyzed by a chemist, was found to contain, by volume, 14.75 per cent. alcohol, and the officers who made the search testified that they were familiar with the mash used in making whiskey, and that the mash

found at appellant's home could have been so used, and that it had gone through a process of fermentation which precedes the distillation of the mash into whiskey. That the mash was composed of corn, raisins, sugar, yeast and water. This keg was found in an unfinished part of the house upstairs that was dark, and the officers found a coil in another room in appellant's house upstairs, and some grain in a pan which had soured. They also found some barley and a couple of boilers and a small bottle, which the officers took to be coloring matter.

Appellant, as a witness in his own behalf, testified that he knew how whiskey was made, and that whiskey could not have been made with the utensils found at his house, for the reason that they could not confine the vapor or steam generated by boiling the mash, thereby compelling its condensation.

The articles found by the officers were not all found in the same place, and we do not know whether, when put together, they would have made a still with which whiskey could be manufactured; but this was a question for the jury. We cannot say that the jury might not have believed that the officers failed to find some part of the mechanism, or that it would have been arbitrary for the jury to have so found.

It will be remembered that appellant was not indicted for possessing a still, and the purpose of this testimony was to show the intended use of the mash; and we have concluded that the testimony is legally sufficient to support the finding that appellant had made a mash fit for distillation and the manufacture of alcoholic liquor, as charged in the indictment.

Over appellant's objection the court gave an instruction numbered 2, reading as follows: "2. A part of the evidence upon which the State relies for a conviction is what is called circumstantial evidence. Circumstantial evidence is evidence not of the main facts in issue, for instance, not evidence that a man was seen to shoot another, but evidence of circumstances from which the

main facts may be inferred. Circumstantial evidence, when it is sufficient to satisfy the rules of law governing its use, and to satisfy the mind of the jury beyond a reasonable doubt, is legal and competent evidence upon which to base a conviction, regardless of the nature of the crime or the extent of the punishment. To justify a conviction upon circumstantial evidence alone, the circumstances must be consistent with each other, and inconsistent with any other reasonable hypothesis, except that the defendant is guilty.''

It is objected that this instruction is argumentative and was a charge on the facts, in that the jury was told that the production of the different bits of evidence had probative value tending to prove appellant was guilty. We think, however, the instruction is not open to either objection. On the contrary, it contained a definition of circumstantial evidence through an illustration, and when the jury was told, as was done here, that, to justify a conviction upon circumstantial evidence alone, the circumstances must be consistent with each other and inconsistent with any other reasonable theory or hypothesis except that the defendant is guilty, we think, no prejudice could have arisen.

Over appellant's objection the court gave an instruction numbered 3, reading as follows: ''3. The court tells you as a matter of law, if some one else made the mash alleged in the indictment for P. H. Dickerson, by his direction or consent, if such mash was made, then defendant Dickerson would be held to have made it.''

Appellant says in his brief that the instruction is not questioned as a proposition of law, but that it is abstract and misleading, as there is no testimony that any other person had anything to do with making the mash, so-called, except himself.

We think the instruction is not correct as an abstract proposition of law, because appellant is indicted as a principal and not as an accessory, yet, under this instruction, he might have been convicted, although he neither

made the mash himself nor stood by and aided, abetted
or assisted some one else to make it.  *Wood* v. *State,*
157 Ark. 503.

But we think no prejudice arose from this instruc-
tion because, as appellant says, the testimony is undis-
puted that no one else had anything to do with making
the mash, whatever it was.  The keg containing the mash
was found in an unfinished room in appellant's house,
and he did testify that his wife's niece and her husband
had rooms upstairs in his house for a short time, but
the time during which they were at his house extended,
as he testified, from about the 20th of April until the
last of May, and the mash was not found until June 8,
and thereafter no one else lived with appellant, and the
officers testified that the mash had been made for only a
few days; so that it stands undisputed, if not admitted,
that no one except appellant put the ingredients in the
keg which were found therein.  As has been said, appel-
lant denied there were any raisins in the keg; but this
was one of the disputed questions of fact in the case.

Appellant asked the court to define the words "mash,
wash and wort," but the court declined to do so, and
appellant thereafter presented instructions defining those
words, and the court refused to give them.  Thereupon
counsel for appellant said:  "I want to save a specific
objection to the submission to the jury the question
whether the defendant made wort or wash fit for distil-
lation, as there is no testimony in this case upon which
a verdict could be returned that the defendant made
wort or wash, as neither one of these was mentioned
in the testimony of any of the witnesses, the only thing
mentioned in the testimony being that he made mash."

It does appear that no witness testified that appel-
lant made wort or wash, and that all the witnesses
referred to the concoction found as "mash," and, there
being no testimony that wort or wash had been made, it
was not proper to submit that question to the jury.
The court, however, sent the case to the jury on an

instruction which told the jury to acquit appellant unless they found beyond a reasonable doubt that he had made mash fit for distillation. This instruction is as follows:

"2. The jury are instructed as a matter of law that the defendant had a right to have intoxicating liquor in his private residence, and, if you find that he did have such liquors in his private residence, you will acquit the defendant, unless you find beyond a reasonable doubt that the defendant made mash intended for the distillation of intoxicating liquors; and mere possession of mash would not authorize the jury to convict the defendant on this charge."

A number of other errors are assigned and are referred to in the brief of appellant, but they relate to matters which have heretofore been decided adversely to appellant's contention.

No error appearing, the judgment is affirmed.