RINEHART *v.* STATE.

Opinion delivered February 18, 1924.

1.  CRIMINAL LAW—REPETITION OF INSTRUCTIONS.—Where the court correctly charged upon the presumption of innocence, it was not error to refuse to give an additional instruction upon that subject.

2.  INTOXICATING LIQUORS—INTENT IN MANUFACTURING.—To authorize conviction of making and fermenting mash, wort and wash fit for distillation or manufacture of alcoholic liquors, in violation of Gen. Acts 1921, p. 372, the State need not prove that defendant intended to use such mash, wort or wash for making intoxicating liquors for beverage purposes.

3.  INTOXICATING LIQUORS—PROOF OF INTOXICATING STATE.—In a prosecution for making and fermenting mash, wort or wash fit for distillation, in violation of Gen. Acts 1921, p. 372, it is not neces-

sary to prove that the mash had reached the alcoholic or intoxicating state of its manufacture.

4. INTOXICATING LIQUORS.—Evidence *held* sufficient to sustain a conviction of making mash, wort or wash fit for distillation or the manufacture of alcoholic liquors.

Appeal from Hempstead Circuit Court; *James H. McCollum,* Judge; affirmed.

No brief for appellant.

*J. S. Utley,* Attorney General; *John L. Carter, W. T. Hammock, Darden Moore* and *J. S. Abercrombie,* for appellee.

WOOD, J. The appellant was convicted under an indictment which, in good form, charged him with the crime of making and fermenting mash, wort and wash fit for distillation or for the manufacture of alcoholic liquors, on the first of October, 1923, in Hempstead County, Arkansas, contrary to the provisions of act No. 324 of the Acts of 1921.

The testimony was to the effect that a deputy sheriff and others searched the premises of appellant, and found in his smokehouse a barrel full of sweetened water in a big goods-box, a washtub full of fermented mash or malt, a little over half a sack of sugar, and shorts, by the side of the box. They took up the floor, and there were two pits, about a foot apart and four feet deep, just large enough to set a barrel down in. They found some whiskey buried in his potato patch, about thirty or forty feet from the back door of his house. In the dining-room they found a five-gallon keg that had contained whiskey. It had about a quart of water in it then. The mash or malt was working. It contained bran, shorts and water, and could have been used for hog feed. The water found in the keg in the house had a whiskey taste. The appellant said that he put the water in the keg and also in the barrel to keep them from falling down.

One of the witnesses said that he never saw such a quantity of shorts and chops as he found there, mixed with water, for two pigs. The appellant said that it was hog feed. Witness called it mash. They asked appel-

lant how often he put his hog feed up, and he said every morning.   In examining around the place where the whiskey was they found a trail leading directly by the whiskey and crossing the potato patch out into the field.   They found three or four places, on the right of the trail, dug down in a furrow, and little trenches that looked like there had been fruit jars buried there.   Beer or whiskey could be made from the stuff in the tub, which was fermented and ready for use.   It was working, so that the sample they took with them' had to be thrown away to keep it from bursting the jar.   They also found a still northeast from appellant's house, about a quarter of a mile, just outside appellant's field, on a branch.   This place had been vacated.   There were six pits there, three of which contained barrels at that time.   There were three empty barrels in appellant's barn which had contained mash.

One witness testified, on behalf of the appellant, to the effect that he lived at appellant's house about May 30, 1923, and was there the day the officers came and searched the premises.   Witness helped appellant about the place, and fed his stock.   Appellant used the tub of shorts and chops to feed his hogs.   Witness went in the smokehouse and got shorts and water.   Witness didn't know about the whiskey that they claimed to have found in the potato patch.   Witness saw some barrels in the barn, which didn't look as if there had been any mash in them.   There was some cotton seed in one, and witness didn't know what was in the other.   He didn't see any keg of beer in the house, and didn't know of any whiskey being manufactured on the place during the six months witness lived with the appellant.   Witness testified that, the next day after the search by the officers of the appellant's premises, he observed an unusually large track going down in the direction of the house—coming from appellant's house across the field.   Witness measured the track, and it was a nine or ten shoe, about thirteen inches in length.   Appellant's foot was much smaller than this 'track.   Witness had seen the old still down there.   The

pits looked like they were old ones—about three years old. Witness used some of the cotton seed in the barn for planting. Three other witnesses corroborated the testimony of this witness for the appellant.

The appellant has not favored us with a brief, but the Attorney General has made a full abstract of the record. The appellant, in his motion for a new trial, does not assign as error the rulings of the court in the instructions given, but only complains of the ruling of the court in refusing appellant's prayers for instructions. Nevertheless, we have examined the instructions that were given, and find that the court declared the law in conformity with the law as announced by this court in *Logan* v. *State*, 150 Ark. 486, and *Burns* v. *State*, 154 Ark. 215. The appellants, in those cases, had been convicted under the same statute now under review, and the statute was there construed.

The appellant complains because the court refused to give his prayer for instruction No. 4 on the presumption of innocence, but we find that the court correctly declared the law on that subject in an instruction which the court gave.

Appellant also complains because the court refused to give his prayer for instruction No. 5, as follows: "You are instructed that, if you find from the evidence that the mash, wort or wash testified about by the witnesses was manufactured by the defendant, still you cannot convict him unless you find from the evidence, beyond a reasonable doubt, that the defendant manufactured such mash, wort or wash with the intention of making alcoholic or intoxicating liquors therefrom for beverage purposes." The court modified this instruction by striking out the words "for beverage purposes," and gave it as thus modified. The appellant duly objected, and excepted to the modification.

This ruling of the court in striking out the words "for beverage purposes" was not erroneous. Under the statute it is not essential to conviction that the State prove that the accused manufactured the mash, wort or

wash with the intention that same be used in making alcoholic liquors for beverage purposes. It is only necessary for the State to prove that the accused made or manufactured a mash, wort or wash with the intention of making distilled alcoholic or intoxicating liquors, regardless of whether such liquors were for beverage purposes or for some other purpose. In the case of *Logan* v. *State, supra,* the court uses this language: "And, when thus viewed, the conclusion is reached that the legislative inhibition is against the making of a mash, wort or wash intended as preliminary processes in making distilled, alcoholic or fermented beverages." The word "beverages," as there used, is synonymous with the word "liquors," and should be construed as meaning liquors. Likewise, in the case of *Milliner* v. *State,* 154 Ark. 611, the word "beverages," as used in the sentence containing the words "distilled, alcoholic and fermented beverages," means liquors. For it was the intention of the lawmakers, by the act under review, to prohibit the making or manufacture of mash, wort or wash as preliminary processes in making distilled, alcoholic and fermented liquors. See *Burns* v. *State, supra*; *Neal* v. *State,* 154 Ark. 327; *Dickerson* v. *State,* 161 Ark. 60; *Williams* v. *State,* 161 Ark. 383.

The appellant also urges that the court erred in refusing to give his prayer for instruction No. 7, as follows: "You are instructed that, before convicting the defendant, you must find that, if the mash was made for an illicit purpose, it had, in fact, reached the alcoholic or intoxicating state of its manufacture." There was no error in the ruling of the court in refusing to grant appellant's prayer for instruction No. 7. In *Logan* v. *State, supra,* we said: "In the practical enforcement of the prohibition law it has been found difficult, in many cases, to prove that the mash, wort or wash, which was admittedly intended for an illegal use, had in fact reached, in the process of its manufacture, the alcoholic or intoxicating stage. * * * This act of the Legislature was obviously designed to relieve the State of the neces-

sity of making such proof, by making it illegal to make a mash, wort or wash fit for the distillation or manufacture of beer, wine, distilled spirits, or other alcoholic liquor." See also *Brown* v. *State,* 154 Ark. 604.

We find no error in the rulings of the court in admitting certain testimony of which appellant complains, and we deem it unnecessary to discuss this assignment. The testimony is fully set forth, *supra,* and it was sufficient to sustain the verdict. The judgment is affirmed.